# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LESLIE MASSE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. CIV-13-1301-HE |
| ) | |
| WAFFLE HOUSE, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff Leslie Masse filed this case against defendant Waffle House[1] arising out of the termination of her employment. She asserts claims for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and 40 Okla. Stat. § 165.1, *et seq.*, and for retaliatory discharge pursuant the FLSA and Oklahoma state law. She also seeks class certification on behalf of herself and those similarly situated. Defendant has moved to compel arbitration. Plaintiff has responded, and the motion is at issue.

## Background

Defendant is a restaurant chain with locations in several states. According to the Amended Complaint and plaintiff's affidavit [Doc. Nos. 7 & 22-1], plaintiff was employed by defendant as a server during three separate periods of employment. At the outset of the first period, which began in late 2010, plaintiff signed an arbitration agreement in addition to other employment documents. She alleges that, when she signed the arbitration agreement, her manager told her that it would apply only to her current employment and that

---

[1]*Defendant indicates the correct name of the defendant is Waffle House, Inc.*

any future period of employment would be treated separately. The first period of employment ended in mid-2011.

According to the complaint, plaintiff was hired in April 2013 to work as a server in defendant's Edmond, Oklahoma location. She alleges that she filled out employment documents related to that hiring which did not include a new arbitration agreement. She further alleges that, during this second period of employment, she witnessed unsafe food storage and handling conditions and that her managers illegally withheld her wages. She alleges that when she complained to her superiors about the unsafe food conditions and wage withholdings, she was retaliated against by having her hours significantly reduced and by being terminated on August 17, 2013.

In September 2013, plaintiff began working for defendant again, this time at an Oklahoma City location. She alleges that, during this third period of employment, she was not paid for overtime hours worked and was paid less than minimum wage. Plaintiff alleges that she was again terminated in retaliation for her complaints about unpaid wages. This case followed.

Discussion

The parties agree that the arbitration agreement signed in connection with the first period of employment was a valid and binding contract. They disagree, however, as to whether the agreement covers plaintiff's claims in this case, which arose during the second and third periods of employment. Plaintiff argues that, because she signed new employment documents at the outset of her second and third periods of employment, new contractual

arrangements arose at those times which did not include an agreement to arbitrate. She states that, based on statements made by her supervisor at the time of the first employment, it was their mutual understanding that the arbitration agreement would not apply to future periods of employment. Defendant contends that the plain language of the arbitration agreement extends to both present and future employment. It also argues that any statements made at the time of, or prior to, execution of the agreement are inadmissible under the parol evidence rule.

The arbitration of disputes is favored under federal law. Once an agreement to arbitrate has been established, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Nat'l Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004). In determining whether an agreement exists at all, the general rule is to apply ordinary state-law principles governing the formation of contracts. Summit Contractors, Inc. v. Legacy Corner, L.L.C., 147 F. App'x 798, 800-01 (10th Cir. 2005) (unpublished) (federal courts "should apply ordinary state-law principles that govern the formation of contracts" when determining whether a valid agreement exists) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

Defendant argues, and plaintiff does not substantially contest, that the state law applicable in the circumstances of this case is that of either Oklahoma or Georgia.[2] Under

---

[2]*The arbitration agreement includes a choice of law provision. It provides that Georgia law will apply unless a court or arbitrator decides otherwise for some reason, in which case the law of the state of the employee's residence—here Oklahoma—will apply.*

3

Oklahoma law, "the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties." In re Kaufman, 37 P.3d 845, 853 (Okla. 2001). "If a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended. That intention cannot be divined from extrinsic evidence but must be gathered from a four-corners' examination of the instrument." Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 546 (Okla. 2003). "Both the [Federal Arbitration Act] and the [Oklahoma Uniform Arbitration Act] require the courts to honor private parties' agreements to settle their 'controversies' in the arbitral forum." Okla. Oncology & Hematology P.C. v. US Oncology, Inc., 160 P.3d 936, 947 (Okla. 2007); *see* Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

Georgia law is substantially the same. "The cardinal rule of construction is to ascertain the intention of the parties." Ga. Code Ann. § 13-2-3; *see also* Georgia-Pac. Corp. v. Lieberam, 959 F.2d 901, 905 (11th Cir. 1992). Under Georgia law, "[t]here are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction; if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity." Georgia-Pac., 959 F.2d at 904 (quoting Copy Systems of Savannah, Inc. v. Page, 398 S.E.2d 784, 785 (1990)). "If contract language is clear and unambiguous, [the court] look[s] only to that language to ascertain the parties' intention. And if the contract language is 'plain, unambiguous and capable of only one reasonable interpretation,' construction of the contract is neither required nor permitted." *Id.*

at 905 (citations omitted) (quoting Hunsinger v. Lockheed Corp., 386 S.E.2d 537, 539 (1989)).

The arbitration agreement involved here is not ambiguous. It provides that the parties "will resolve by arbitration all claims and controversies [ ], past, present, or future, whether or not arising out of [plaintiff's] employment or termination from employment . . . ." [Doc. #14-1, para. 2]. It further states that, absent narrow circumstances not present here, the agreement "can only be revoked by a writing signed by both parties which specifically states an intent to revoke" it, and that it "will survive the termination of [plaintiff's] employment . . . ." *Id.* at para. 12. Finally, the agreement states that it will "remain valid and enforceable unless modified by" defendant. *Id.* at para. 14.

Plaintiff's reliance on inconsistent statements by her supervisor prior to execution of the arbitration agreement do not lead to a different result. Such statements are subject to the parol evidence rule, observed in both Georgia and Oklahoma. *See* Ga. Code § 13-2-2 (1); 15 Okla. Stat. § 137.

In light of the agreement's terms referenced above, the court concludes plaintiff's claims are within the scope of the arbitration agreement, regardless of which state's law is applied.[3]

---

[3]*Plaintiff argues that she is entitled to a jury trial on the issue of whether her claims are covered by the arbitration agreement. However, where the contract is unambiguous, it is a matter for the court. See Georgia-Pac.,959 F.2d at 904 ("Whether a contract is ambiguous is a question of law for the courts to decide.") (citing Copy Systems of Savannah, 398 S.E.2d at 785.); Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla. 2003) ("If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law . . . .").*

The Federal Arbitration Act provides that, if an issue is referable to arbitration under a written arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3. Some courts have concluded that dismissal, rather than a stay, may be appropriate where all claims are referred to arbitration. *E.g.* Choice Hotels Internat'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001). Here, however, the court concludes that "under Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994), and in light of the plain language of the statute, that the proper result of defendant's motion is a stay." Griggs v. Check 'N Go of Okla., Inc., 2006 WL 3544338 at *1 (W.D. Okla. Nov. 29, 2006).

For the reasons stated, defendant's motion to compel arbitration and dismiss or stay the case [Doc. #11] is **GRANTED**. Plaintiff's claims are ordered to arbitration pursuant to the arbitration agreement. Further proceedings in this case are **STAYED** pending completion of the arbitration process. 9 U.S.C. § 3. As further proceedings in this court may be unnecessary, the Clerk of Court is directed to administratively close this case in her records. Either party may move to reopen the case upon completion of the arbitration for such further proceedings in this court, if any, as may be appropriate. If no party has moved to reopen this case within **ninety (90) days** after issuance of a final award in the arbitration proceeding, this case will be deemed dismissed with prejudice.

**IT IS SO ORDERED**.

Dated this 13th day of May, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE